UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JANE GRACE SALEM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:23-cv-01317-SRC |
| | ) |
| HON. MARY R. RUSSELL, | ) |
| | ) |
| Defendant. | ) |

**Memorandum and Order**

Self-represented Plaintiff Jane Salem brings this action under 42 U.S.C. § 1983, alleging that Chief Justice Mary R. Russell of the Supreme Court of Missouri violated her civil rights. Doc. 1.  Salem has moved for leave to proceed in forma pauperis.  Doc. 2.  Having reviewed the motion and the financial information submitted in support, the Court grants the motion and waives the filing fee.  *See* 28 U.S.C. § 1915(a)(1).  Because Salem proceeds in forma pauperis, the Court must review her complaint under section 1915.  Based on such review, the Court dismisses Salem's complaint for failure to state a claim upon which the Court may grant relief. *See* 28 U.S.C. § 1915(e)(2)(B).

**I.      Background**

Salem sues Chief Justice Russell in her "Official Capacity as the Council Chair of the Judicial Council of Missouri" for violating her constitutional rights under the First and Fourteenth Amendments.  Doc. 1-1 at 2.  Salem frames her alleged constitutional violations as a claim under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).  *Id.* at 10.  According to Salem, the Judicial Council is "the entity responsible for establishing policies governing the state's courts in Missouri."  *Id.*  The policies the Judicial Council has created allegedly "fail to train [Missouri] judges" on two key issues:

> First and foremost, [Salem] contend[s] that the right to "parenting" is a fundamental right, as firmly established in *Meyer v. Nebraska*, 262 U.S. 390 (1923). Secondly, [she] assert[s] that the United States Constitution unequivocally prohibits the issuance of physical custody orders that do not allow for any "actual parenting time" for a parent, *unless that parent is judicially declared 'unfit.'*

*Id.* at 2–3, 11. In other words, Salem asserts that a "duty to train Missouri judges" exists, and that if a court cannot find a parent "unfit" by clear and convincing evidence of harm to minor offspring (i.e., findings of abuse, neglect, abandonment, or endangerment), then the court must grant a parent "actual parenting time" in a physical-child-custody order. *Id.* at 7–8, 12. She alleges that failing to grant "actual parenting time" in such situations violates a parent's constitutional rights, and specifically, has caused proximate harm to her. *Id.* at 11–12. Salem explains that a St. Louis County court order, dated March 6, 2023, "deprive[d] [her] of any 'actual parenting time' with [her] offspring," despite the fact that she is "a 'fit' parent" under the law. *Id.* at 2.

In support of her arguments, Salem cites *Stanley v. Illinois*, 405 U.S. 645 (1972); *Smith v. Organization of Foster Families for Equality and Reform*, 431 U.S. 816 (1977); *Quilloin v. Walcott*, 434 U.S. 246 (1978); *Parham v. J.R.*, 442 U.S. 584 (1979); and *Santosky v. Kramer*, 455 U.S. 745 (1982). Doc. 1-1 at 4. She argues that under *Stanley*, Missouri cannot "interfere with a parent's right to raise her offspring 'without [a] compelling state interest and clear evidence of harm to the offspring.'" *Id.* at 7. In addition, Salem asserts that the Fourteenth Amendment guarantees her "right to 'raise offspring'" and the First Amendment protects her "right to 'familial association,' which encompasses private familial speech." *Id.* at 3–4 (emphasis removed). She claims that child "[c]ustody orders that prevent 'fit' parents from having private conversations with their offspring constitute unconstitutional restrictions on the time, place, and manner of [] interactions." *Id.* at 4–5 (emphasis removed).

2

Salem also argues that the "supervised visitation" Missouri courts require "leaves noncustodial parents with no 'actual parenting time'" because parents have no control during the visits. *Id.* at 5. Salem argues that the State's exercise of control during the visits is "prison-like" and leaves noncustodial parents with "no actual ability to exercise care, custody, and control of their offspring," which purportedly violates the Fourteenth Amendment, and "no actual ability to exercise private familial speech with their offspring," which allegedly deprives parents of their First Amendment rights. *Id.* at 5–6. Further, Salem argues that a physical-child-custody order denying a "fit" parent "actual parenting time" infringes on constitutional rights, contradicts prevailing public policy, and creates a "significant humanitarian crisis." *Id.*

Regarding her own child-custody case in Missouri, Salem claims the court failed to conduct a "strict scrutiny analysis and failed to inquire into whether the custodial timeshare plans were the least restrictive possible." *Id.* at 8. Salem argues that her custody order is unconstitutional per se and violates her equal-protection rights. *Id.* at 9. Salem acknowledges Missouri's process of determining custody based on the "best interest" of the child, but she argues that the "constitutional 'right to be parented' takes precedence over the offspring's 'best interests.'" *Id.* In addition, she argues that Missouri courts lack subject-matter jurisdiction to determine the best interests of a child when both parents are "fit." *Id.* at 10 (citing *Prince v. Mass.*, 321 U.S. 158, 166 (1944)).

In the relief section of the complaint, Salem seeks judgment in her favor, "[g]eneral and special damages" (including actual and punitive damages in an amount to be determined at trial), and the costs of the litigation. Doc. 1 at 5–6. In her attached pleadings, Salem states that she seeks "a court order in Missouri" and "an injunction to compel the Defendant to undertake the task of training their judicial officers" on the "two key issues" she identified. Doc 1-1 at 1, 3, 12. Salem claims she has suffered emotional distress and hardship. *Id.* at 12.

3

Independent review of Salem's litigation history on Case.net, Missouri's online docketing system, shows that Salem currently has multiple charges pending against her in state court. Based on a document filed by the State on February 1, 2024, regarding bond conditions for Salem at that time, Salem had pending charges that included: (1) violation of a protective order; (2) suspicion of trespassing, destruction of private property, and outstanding traffic warrants; and (3) suspicion of possession of controlled substance, trespassing, resisting arrest, and possession of drug paraphernalia. *See State v. Salem*, No. 24JE-CR00347 (23d Jud Cir. filed Jan. 30, 2024). As relevant here, one pending state matter involves an order of protection issued against Salem on March 6, 2023. *See Brawley v. Salem*, No. 22SL-PN05870 (21st Jud. Cir. filed Dec. 1, 2022). That order states that Salem cannot communicate with or go within 500 feet of a "current or former spouse." *Id.* Based on documents filed in that case, it appears that the court awarded the "current or former spouse" full custody of the parties' son, which included the discretionary right to establish a visitation schedule between Salem and her son.

**II.    Standard**

Under section 1915(e)(2)(B), the Court must dismiss a complaint filed in forma pauperis if the action is "(i) frivolous or malicious; (ii) fails to state a claim upon which relief can be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. When reviewing a complaint filed by a self-represented person, the Court accepts well-pleaded facts as true, *White v. Clark*, 750 F.2d 721, 722 (8th Cir. 1984), and liberally construes the complaint, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the Court can discern the essence of an allegation, it "construe[s] the complaint in a way that permits the [self-represented party's] claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even self-represented plaintiffs must allege facts that, if true, state a claim for

4

relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980); *see also Stone v. Harry*, 364 F.3d 912, 914–15 (8th Cir. 2004) (refusing to supply additional facts or to construct a legal theory for the self-represented plaintiff).

To state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Id.* at 679 (citing Fed. R. Civ. P. 8(a)(2)). "A claim has facial plausibility when the pleaded factual content allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555). The Court engages in a context-specific task and draws on its judicial experience and common sense when determining whether a complaint states a plausible claim for relief. *Id.* at 679.

### III. Discussion

Salem alleges a *Monell* claim against Chief Justice Russell for failure to train. After careful review and liberal construction of the allegations in the pleadings, the Court finds that it must dismiss this case for failure to state a claim upon which the Court may grant relief.

"A plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer and therefore must establish the municipality's liability for the alleged conduct." *Kelly v. City of Omaha*, 813 F.3d 1070, 1075 (8th Cir. 2016). Such liability may attach if the constitutional violation "resulted from (1) an 'official municipal policy,' (2) an unofficial 'custom,' or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018) (quoting *Corwin v. City of Independence*, 829 F.3d 695, 699 (8th Cir. 2016)). Inadequate training may serve as the basis for "[section] 1983 liability

5

only where the failure to train amounts to deliberate indifference." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).  To show deliberate indifference, a plaintiff must prove that the municipality "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." *See Jennings v. Wentzville R-IV Sch. Dist.*, 397 F.3d 1118, 1122 (8th Cir. 2005) (quoting *Larson v. Miller*, 76 F.3d 1446, 1454 (8th Cir. 1996)).  "A pattern of similar constitutional violations by untrained employees is ordinarily necessarily to demonstrate deliberate indifference for purposes of failure to train." *See S.M. v. Lincoln Cnty.*, 874 F.3d 581, 585 (8th Cir. 2017).

     Salem argues that a Missouri-physical-custody order that provides "no actual parenting time" for a parent that has not been declared unfit, is unconstitutional.  According to Salem, this proposition is clearly supported by Supreme Court precedent.  This Court finds that Salem's cited cases provide support for a parent's Fourteenth Amendment interest in having broad authority in the rearing of her children; however, none of the cited cases clearly establish a constitutional right of "actual parenting time." *See Meyer v. Nebraska*, 262 U.S. 390, 399 (1923) (stating that the Fourteenth Amendment "liberty" guarantee generally includes, among other things, the right to "establish a home and bring up children" and "those privileges long recognized at common law as essential to the orderly pursuit of happiness"); *Stanley*, 405 U.S. at 651 (discussing that the Supreme Court has "frequently emphasized the importance of the family" in its decisions and that the Fourteenth Amendment protects the "integrity of the family unit"); *Smith*, 431 U.S. at 838–47 (discussing a protected liberty interest under the due-process and equal-protection clauses of the Fourteenth Amendment for foster parents who oppose removal of foster children from foster homes); *Quilloin*, 434 U.S. at 254–55 (finding no due-process violation by application of a "best interests of child" standard); *Parham*, 442 U.S. at 602–03 (discussing the historical concept of a family with "broad parental authority over minor

6

children" and acknowledging that a state has some "constitutional control over parental discretion in dealing with children when their physical or mental health is jeopardized"); *Santosky*, 455 U.S. at 753–58 (holding that due process requires "clear and convincing evidence" before a state may completely terminate a parent's rights to a natural child); *Bd. of Dirs. of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 544–46 (1987) (recognizing a person's right to constitutional protection in freedom of association but finding no First Amendment violation where the relationship at issue was "not the kind of intimate or private relation that warrants constitutional protection"); *Troxel v. Granville*, 530 U.S. 57, 65–70 (2000) (recognizing the Fourteenth Amendment's protection of "the fundamental right of parents to make decisions concerning the care, custody, and control of their children" and that a parent's decision regarding a child's best interests must be given some deference in the context of grandparent visitation rights because of the traditional presumption that a fit parent will act in the best interest of her child); *Prince*, 321 U.S. at 166 (recognizing "the private realm of family life which the state cannot enter" but acknowledging that family life is "not beyond regulation in the public interest").

Where no established constitutional violation exists, the Court cannot find deliberate indifference for failure to train because the defendant had no notice that its procedures are inadequate or likely to result in constitutional violations by untrained employees. *See Jennings*, 397 F.3d at 1122. Furthermore, Salem has alleged no pattern of similar purported constitutional violations by employees. *See S.M.*, 874 F.3d at 585. Thus, Salem's complaint fails to state a *Monell* claim for failure to train, and the Court must dismiss it for failure to state a claim upon which the Court may grant relief.

7

**IV.     Conclusion**

Accordingly, the Court grants Salem's [2] motion for leave to proceed in forma pauperis and waives the filing fee is waived.  *See* 28 U.S.C. § 1915(a)(1).  The Court directs the Clerk of the Court not to process or cause process to issue upon the complaint because the complaint fails to state a claim upon which relief can be granted.  The Court dismisses Salem's complaint against Chief Justice Russell without prejudice.  *See* 28 U.S.C. § 1915(e)(2)(B).  The Court holds that an appeal from this dismissal would not be taken in good faith.  An order of dismissal will accompany this Memorandum and Order.

So ordered this 28th day of March 2024.

*[signature: SL R. CR]*

STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE